Reese, J.
delivered the opinion of the court.
This is an indictment for an assault with intent to commit murder in the first degree, an offence which, in a slave, is capital by the provisions of our statute. He was convicted in the circuit court, and has prosecuted this appeal in error to reverse the judgment. It is argued by his counsel that, at the term previous to that when the verdict and judgment were given, a mis-trial was improperly entered; that the record shows only that the defendant and his counsel consented to the discharge of the jury when the consent of the master should also have been shown, but the counsel was coufisel for the master and the slave, and the consent of the defendant and his counsel are well enough, and bring the case within the principle stated by this court in the case of Mahala vs. The State, 10 Yer. But it is said the circuit court erred in rejecting the master of the slave, when offered as a witness in his favor, on the gz'ound of his incompetency from pecuniary interest. And of this opinion are the court. A father has an interest, which may be valuable, in the services of his minor son, yet it is not questioned that he can be a witness *104 for or against him on a charge affecting hi's life. A master . ° . . ° , ? . , have a pecuniary interest m the future labor ana ser* vices of his apprentice, much exceeding, it may he, in a fe'W pursuits, the entire value of this slave; yet, perhaps, it has never occurred to any one that the master is incompetent to testify on behalf of the apprentice in a matter affecting his life. The relation of master and slave is indeed different; hut in a case like this the law, upon high grounds of public policy, pretermits, for a moment, that relation,' takes the slave out of the hands of his master, forgets his claims and rights of property, treats the slave as a rational and intelligent human being,-responsible to moral, social and municipal duties and obligations, and gives him the benefit of all the forms of trial which jealousy of'power and love of liberty have induced the freeman to throw around himself for his own protection. If then the master know any fact tending to save the life of the slave, shall society, who have taken from him the slave for the purpose of trial, say to him, not that you are master and we will weigh your credit, but you are master and shall not speak at all? On grounds of public policy, of common humanity, of absolute necessity, the master must be held to be competent as a witness for or against the slave. Society will not allow him to say, I have a pecuniary interest in the event of the trial, my testimony may subject me to a loss, and I will not testify against my slave. On the other hand, humanity forbids that society should say, you have such interest and shall not be heard to prove a fact in his favor. In cases where one slave may kill another, the master may often be the only person cognizant of his guilt, or the only person who can establish his innocence. Shall he refuse to speak in the one case lest he in* cur a loss, shall his lips be sealed in the other because he has an interest? Public policy and common humanity dictate the necessity of so treating this relation that the guilty should not escape punishment, or the innocent be made to suffer. In England, where rewards have been offered for conviction by the public, the witness entitled to such rewards have been held competent by the unanimous opinion of the twelve judges, and this against the life of an individual, on. *105 grounds of public policy. The case before the court seems to ° i a v have occurred in New Jersey, (1 Sou. Rep., Aaron vs. State,) in the case of a negro servant or slave for a term of years, and the master was held to be competent. Except that case, there seems to be no precedent. But upon principle, we have no doubt that the objection must be held to extend to the credit not to the competency of the master.
The verdict will therefore be set aside, and the judgment reversed, and the .prisoner remanded to be tried again.